ROTHENBERG, J.
 

 Natural Answers, Inc. and Brian A. Feinstein (“Feinstein”) (collectively, “NAI”) appeal from two orders granting summary judgment in favor of Carlton Fields, P.A. and Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sper-ando (collectively, “the law firms”). Because the undisputed facts reveal that any
 
 *886
 
 harm to NAI is attributable to failed negotiations, not legal malpractice, we affirm.
 

 The instant legal malpractice action arose from a collapsed business negotiation commenced in 1999. At that time, Feinstein was the President and CEO of Natural Answers, Inc., a company involved in the production and distribution of herbal/natural remedies and vitamins. Fein-stein sought to expand Natural Answers, Inc. to the nationwide level. To that end, Feinstein’s friend, the Honorable Bruce Kauffman (from the Eastern District of Pennsylvania), introduced him to Melvyn Estrin (“Estrin”), a businessman with experience in national drugstore ventures.
 

 In November 1999, Feinstein and Estrin began negotiating a deal whereby, in exchange for a stake in Natural Answers, Inc., Estrin would provide consulting and business advice, invest in the corporation himself, and procure the investment of additional funds from outside parties. During the initial period of meetings and discussions, NAI was represented by Luis Prats (“Prats”), an attorney with Carlton Fields. Notably, on December 10, 1999, Prats sent a letter to Estrin outlining the “major terms” of the “agreement reached.” However, a number of significant terms remained in dispute, and the letter acknowledged an understanding that a different attorney would finalize a formal agreement to be signed by the parties. The record reflects that by early 2000, in an effort to execute a final contract, NAI and Estrin hired transactional attorneys: NAI hired Jerald August, and Estrin hired Morris DeFeo. From January through March 2000, these transactional attorneys exchanged six different proposed drafts, however their clients were unable to agree on a final written contract. In January and February of 2000, Estrin made two payments ($100,000 each) to Natural Answers, Inc. as an “initial investment.”
 

 Thereafter, negotiations broke down, and although the parties attempted to recommence discussions (even meeting in Judge Kauffman’s chambers at one point), on April 14, 2000, Estrin wrote to Fein-stein declaring that while he was willing to make an investment in Natural Answers, Inc., he no longer wished to become personally involved, and that if Feinstein did not want his investment, he should return his $200,000. In response, Feinstein accused Estrin of bad faith and nefarious motives. He did not return the $200,000.
 

 In August 2001, the dispute between NAI and Estrin was brought before the District Court of Maryland with Estrin as the plaintiff seeking the return of his $200,000. Thereafter, the Gary Firm replaced Carlton Fields as counsel for NAI. NAI counterclaimed on the theories of breach of contract, promissory estoppel, and breach of the covenant of good faith/ fair dealing. The District Court granted summary judgment in favor of Estrin, ordering the return of the $200,000, finding that: (1) the parties contemplated, but did not reach, a final written agreement; (2) NAI’s action for damages, as opposed to specific enforcement of the promise, precluded relief based upon promissory estop-pel; and (3) the breach of the covenant of good faith/fair dealing is not actionable under Maryland law. NAI appealed, and the Fourth Circuit affirmed, holding that the parties’ failure to complete their negotiations did not give rise to an action for breach of contract.
 

 After losing in federal court, NAI sued the law firms. NAI alleged transactional negligence as to Carlton Fields, arguing that Prats, who represented NAI during its initial negotiations with Estrin, was negligent when he failed to obtain a signature from Estrin after a binding agreement was reached, and for advising NAI that a binding agreement had been
 
 *887
 
 reached. NAI also claimed that the Gary Firm and Carlton Fields committed litigation malpractice by not adequately defending NAI against Estrin’s motion for summary judgment in the federal litigation.
 

 NAI moved for summary judgment, and the law firms filed cross-motions. Carlton Fields argued that: (1) Prats was not the lead transactional attorney — Jerald August was retained and served in that capacity; (2) the federal litigation established that the failure to conclude the parties’ negotiations, not malpractice, was the proximate cause of NAI’s losses; and (3) NAI’s lawsuit was barred by collateral estoppel. The Gary Firm argued that they performed as well as possible in the federal litigation, and that judgmental immunity and collateral estoppel barred NAI’s lawsuit. NAI’s litigation malpractice claims depended almost entirely upon an “expert” affidavit, which the trial court rejected as speculative, finding that it did not raise any issues of fact.
 

 The trial court denied NAI’s motion and granted the law firms’ motions for summary judgment in two separate orders, which we review de novo.
 
 See Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000);
 
 Sheikh v. Coregis Ins. Co.,
 
 943 So.2d 242, 243 (Fla. 3d DCA 2006).
 

 THE TRANSACTIONAL NEGLIGENCE CLAIM
 

 We begin our analysis with recognition of the decisions rendered by the District Court of Maryland and the Fourth Circuit Court of Appeals, and federal principles of collateral estoppel. The District Court found, and the Circuit Court affirmed, that the undisputed facts reflect that at all times, the parties contemplated the execution of a formal written contract, and that any agreement would not be binding until the transactional attorneys executed the requisite documents and obtained the parties’ signatures. In other words, all of the parties involved understood that the negotiations between NAI and Estrin were just that — negotiations, until the finalized documents were executed and signed. However, these negotiations broke down, and the parties failed to enter into a binding agreement. Thus, there was no meeting of the minds.
 

 Federal principles of collateral es-toppel bar re-argument of whether the parties had reached a legally binding agreement. Two federal courts concluded that there was no meeting of the minds, and the failure to conclude negotiations was the sole proximate cause of any loss to NAI. The issue of whether a binding agreement existed at any stage was fully litigated and ruled upon in Maryland, and to the extent that NAI seeks to revisit those rulings, NAI is barred.
 
 See I.A. Durbin, Inc. v. Jefferson Nat’l Bank,
 
 793 F.2d 1541, 1549 (11th Cir.1986) (detailing the following federal prerequisites to the application of collateral estoppel: “(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding”).
 

 Even if we were to find that collateral estoppel does not bar re-litigation of the central issues involved in NAI’s claims, we agree with the Miami-Dade Circuit Court’s finding that NAI’s transactional negligence claim against Carlton Fields cannot stand, as Carlton Fields cannot be held liable for failing to obtain a signature on a contract that simply did not exist.
 
 *888
 
 The overwhelming undisputed evidence demonstrates that the parties never formed a binding agreement. Hence, Carlton Fields could not have committed transactional negligence for failing to obtain Estrin’s signature on a preliminary document.
 

 Reviewing the evidence in the light most favorable to NAI,
 
 Sierra v. Shevin,
 
 767 So.2d 524, 525 (Fla. 3d DCA 2000), it is clear that Prats could not have obtained Estrin’s signature on a binding contract in December 1999, because at that time the parties had merely agreed to negotiate an agreement. The final agreement contemplated by the parties was extremely complex, involving tax issues, the sale of securities, and a host of other substantial questions, which the parties continued to negotiate until March 2000. Furthermore, and of critical importance here, the evidence reflects that both sides were aware of these complexities, understood them, and dealt with them by hiring transactional attorneys, who were specifically charged with generating the requisite documents and representing the parties through this process.
 

 Thus, NAJ’s current argument — that but for Prats’ failure to obtain Estrin’s signature in December 1999, NAI would have recovered upwards of $25 million in the federal litigation, and that NAI reasonably relied upon Prats’ negligent advice that a final agreement did exist — defies not only logic, but reams of undisputed evidence demonstrating that in December 1999, everyone involved was aware that the negotiations were in a very early stage. Carlton Fields certainly cannot be faulted for failing to obtain Estrin’s signature and binding him to a legal agreement where many material terms remained unresolved.
 

 We, therefore, affirm the trial court’s order granting summary judgment in favor of Carlton Fields as it relates to NAI’s transactional negligence claim.
 

 THE LITIGATION MALPRACTICE CLAIMS
 

 Carlton Fields was NAI’s lead counsel in the litigation against Estrin until December 2001, when the Gary Firm took over as lead litigation counsel. NAI argued below that the law firms’ representation fell below the standard of care and caused the adverse outcome suffered by NAI. The trial court found that the undisputed facts entitled both Carlton Fields and the Gary Firm to judgment in the litigation malpractice claims as a matter of law, as neither firm’s conduct could have proximately caused the loss to NAI.
 
 See, e.g., Silvestrone v. Edell,
 
 721 So.2d 1173, 1175 (Fla.1998) (holding that liability for litigation malpractice requires that the attorney be the proximate cause of the client’s loss).
 

 We agree with the trial court. NAI’s litigation malpractice claims are entirely devoid of merit. As the trial court found, and the voluminous record reveals, both firms performed admirably during the representation of NAI, and the outcome of the federal litigation was based, not on the deficient conduct of the attorneys, but on the failure of NAI and Estrin to reach a finalized contract. Moreover, the doctrine of judgmental immunity prevents lawsuits based on an attorney’s good faith tactical decisions.
 
 Crosby v. Jones,
 
 705 So.2d 1356, 1358 (Fla.1998) (noting that an attorney does not act as an insurer for the outcome of a case, and good faith tactical decisions are generally not actionable).
 

 In response, NAI offered an “expert” affidavit of attorney Rubenstein who, without any factual support, speculated that in his opinion, had the law firms conducted the litigation differently, the outcome of the case would have favored NAI. The
 
 *889
 
 trial court properly rejected this affidavit and found that it did not create a genuine issue of material fact.
 

 Accordingly, as to NAI’s litigation malpractice claims against the law firms, summary judgment was appropriately granted.
 

 CONCLUSION
 

 Although NAI aspired to expand its business and engaged in negotiations with Estrin, their negotiations never resulted in a contract, and NAI never experienced the explosive growth it sought. Having exhausted its attempts to recoup its alleged losses from Estrin, NAI attempted to recover its losses from its former attorneys. The evidence, however, reflects that any loss incurred by NAI was caused by its failure to reach a binding contract with Estrin on terms agreeable to both sides, not a failure to obtain a signature during the preliminary stages of extremely complex negotiations, nor by the legal representation provided to NAI by Carlton Fields and the Gary Firm.
 

 Affirmed.